UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ASHLEY COPLEY,<br>Plaintiff, | Case No. 1:12-cv-426 |
| v. | Dlott, J.<br>Litkovitz, M.J. |
| MEDPACE, INC.,<br>Defendant. | **REPORT AND<br>RECOMMENDATION** |

Plaintiff, Ashley Copley, brings this action under the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*, and Ohio state law alleging breach of contract, unjust enrichment, and equitable estoppel against defendant Medpace, Inc. (Medpace) for allegedly terminating her employment in order to deny her certain benefits. (Doc. 1). This matter is before the Court on Medpace's motion to dismiss plaintiff's ERISA claim (Doc. 7), plaintiff's response in opposition (Doc. 13), and Medpace's reply memorandum. (Doc. 14).

**I. Background**

Plaintiff was an employee of Medpace from August 28, 2007 through May 31, 2011. (Doc. 1 at ¶¶ 9, 22). During her employment with Medpace, plaintiff was provided stock options on two occasions. *Id.* at ¶¶ 10-11. Plaintiff was first given the option to purchase 1000 shares of Medpace on May 9, 2008 and on January 1, 2009, was given the option to purchase 2000 shares. *Id.* at ¶ 10. These stock options vested on January 1, 2011 and May 8, 2011, respectively. *Id.* at ¶ 11. In order to be able to exercise her right to convert her options, plaintiff had to be a Medpace employee at the time of conversion. *Id.* at ¶ 12.

In the Spring of 2011, plaintiff requested that she be able to work remotely part time as her husband was being transferred to Tennessee. *Id.* at ¶ 13. Plaintiff and Medpace entered into an agreement whereby plaintiff would continue her employment with Medpace through June 30,

2011. *Id.* at ¶ 14. After June 30, 2011, plaintiff and Medpace agreed that plaintiff would continue her employment as an independent contractor and/or consultant at least through July 31, 2011. *Id.* at ¶ 15.

On June 17, 2011, Medpace closed on a private equity investment with another company. *Id.* at ¶ 18. Pursuant to the terms of the investment, stock options held by Medpace employees had to be terminated and/or surrendered. *Id.* at ¶ 19. As of June 17, 2011, employees with outstanding stock options were offered consideration for agreeing to surrender their options. *Id.* at ¶ 20. Plaintiff's stock options could have been converted at the time of the private equity investment or, alternatively, plaintiff would have been offered consideration in excess of $75,000.00 for agreeing to terminate her option rights. *Id.* at ¶ 21.

Plaintiff was terminated by Medpace on May 31, 2011, before the expiration date of her employment contract. *Id.* at ¶ 22. Medpace refused to allow plaintiff to execute her stock options and terminated her rights to do so as of May 31, 2012. *Id.* at ¶ 23.

## II. Standards of Review under Rules 12(b)(1) and 12(b)(6)

Plaintiff bears the burden of proving jurisdiction in order to survive a motion to dismiss on grounds of lack of subject matter jurisdiction. *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003); *Michigan Southern R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002); *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990). "In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits." *Nichols*, 318 F.3d at 677 (citing *Rogers v. Stratton Industries*, 798 F.2d 913, 916 (6th Cir. 1986)). "[W]here a defendant argues that the plaintiff has not alleged sufficient facts in [his] complaint to create subject matter

jurisdiction, the trial court takes the allegations in the complaint as true." *Nichols*, 318 F.3d at 677 (citing *Jones v. City of Lakeland*, 175 F.3d 410, 413 (6th Cir. 1999)).

Furthermore, to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). While a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 566 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

Additionally, a court may consider exhibits attached to the complaint or motion to dismiss under certain circumstances. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citing *Nieman v. NLO, Inc.*, 108 F.3d 1546 (6th Cir. 1997)). Though, generally, a court may not consider matters outside of the pleadings when ruling on a Rule 12(b)(6) motion without converting it into a Rule 56 motion for summary judgment, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th

Cir. 1997) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

With these principles in mind, the Court reviews plaintiff's complaint.

### III. Resolution

Medpace moves for dismissal of plaintiff's ERISA claim, asserting that the stock option plan upon which the ERISA claim is based is not an "employee welfare benefit plan" or "employee welfare pension plan," but is instead an incentive plan that is not governed by ERISA. In support, Medpace has submitted a copy of the 2008 Non-qualified Stock Option Plan (the Plan). *See* Doc. 8, Ex. A. Medpace contends that the plain language of the Plan demonstrates that it is not subject to ERISA and, consequently, plaintiff's ERISA claim must be dismissed for lack of subject matter jurisdiction and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

In response, plaintiff asserts that whether or not the Plan is governed by ERISA is a question of fact which should be determined by looking at extrinsic evidence not currently before the Court. Plaintiff accordingly requests that Medpace's motion to dismiss be denied as premature as discovery is necessary to determine whether the Plan is an ERISA plan. For the following reasons, the undersigned recommends that Medpace's motion to dismiss plaintiff's ERISA claim be granted.

ERISA allows civil litigants to recover damages incurred where employers interfere with their protected rights. Specifically, 29 U.S.C. § 1140 makes it "unlawful for any person to discharge . . . a participant or beneficiary for . . . the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." *See* 29 U.S.C. § 1140. ERISA applies only where an "employee benefit plan" exists. ERISA defines "employee benefit

plan" as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3). An "employee welfare benefit plan" is defined as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1). Section 186 of ERISA includes plans that govern employee benefits such as vacation and holiday time and severance pay. *See* 29 C.F.R. § 2510.3-1(a)(3). An "employee pension benefit plan" is defined as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program— (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan. A distribution from a plan, fund, or program shall not be treated as made in a form other than retirement income or as a distribution prior to termination of covered employment solely because such distribution is made to an employee who has attained age 62 and who is not separated from employment at the time of such distribution.

29 U.S.C. § 1002(2). ERISA specifically excludes "payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees." 29 C.F.R. § 2510.3-2(c).

"Determining the existence of an ERISA plan is a question of fact to be answered in light

of all the surrounding circumstances and facts from the point of view of a reasonable person. . . ." *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 847 (6th Cir. 2006). Courts "must look to the nature of the plan itself[,]" when distinguishing ERISA plans from non-ERISA plans. *Id.* (citing *Cassidy v. Akzo Nobel Salt, Inc.*, 308 F.3d 613, 616 (6th Cir. 2002)). The starting point for interpreting any written instrument, such as the Plan, is a review of its plain language. *Id.* at 850. Only where the terms of the plan are ambiguous, do courts "look to extrinsic evidence to discern the purpose of the plan as the average employee would have reasonably understood it." *Id.* See also *Dudenhoeffer v. Fifth Third Bancorp.*, 757 F. Supp.2d 753, 757 (S.D. Ohio 2010) (interpretation of an ERISA plan is generally made by reviewing the plan's language, "[r]esort to extrinsic evidence to aid in interpretation is permissibly only when the terms of the plan are ambiguous.").

The issue before the Court is limited to whether the Plan is an "employee benefit plan" subject to ERISA. If the Plan is an "employee benefit plan," then plaintiff's ERISA claim survives. If not, then Medpace's motion to dismiss plaintiff's ERISA claim must be granted pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

The stated purpose of the Plan is "to provide a means by which selected Employees and Directors of [Medpace] and its affiliates may be given an opportunity to purchase stock of [Medpace]." Doc. 8, Ex. A, ¶ 1(a). The Plan further provides: "[Medpace], by means of the Plan, seeks to retain the services of person who are now Employees, Directors, or Consultants, and to provide incentives for such persons to exert maximum efforts for the success of [Medpace] and its affiliates." *Id.* at ¶ 1(b). By its plain language, the Plan purports to be intended to allow designated Medpace employees and other individuals to purchase Medpace stock to incentivize these individuals to ensure Medpace's success. Simply put, the Plan's intent

is to encourage select Medpace employees like plaintiff to work harder by creating an economic incentive through the offering of stock options. Given this stated and unambiguous intent, the undersigned finds that the Plan is not an "employee benefit plan" subject to ERISA.

First, the Plan is not an "employee welfare benefit plan." As noted above, "employee welfare benefit plans," as defined by ERISA, are plans that are established *"for the purpose of* providing its participants or their beneficiaries" benefits such as health care, vacation, disability, and unemployment. 29 U.S.C. § 1002(1) (emphasis added). While the Sixth Circuit has not yet addressed this issue, appellate and district courts consistently hold that incentive-based stock option plans, such as the Plan, are not "employee welfare benefit plans." *See, e.g., Oatway v. American Int'l Group, Inc.*, 325 F.3d 184, 189 (3d Cir. 2003) (stock option incentive plan was intended to improve employee performance and retention and, thus, was not "employee welfare benefit plan"); *Emmebegger v. Bull Moose Tube Co.*, 197 F.3d 929, 932-33 (8th Cir. 1999) (stock-based incentive plan designed to encourage employee retention was "bonus program" and not "employee welfare benefit plan"); *Murphy v. Inexco Oil Co.*, 611 F.2d 570 (5th Cir. 1980) (bonus plan created with intent to reward employees for service was not "employee welfare benefit plan"); *Kaelin v. Tenneco, Inc.*, 28 F. Supp.2d 478, 486 (N.D. Ill. 1998) (providing stock options to employees is unrelated to ERISA-based benefits and such plans are not "employee welfare benefit plans"); *Long v. Excel Telecomm's Corp.*, No. 3:98-cv3015G, 2000 WL 1562808, at *4 (N.D. Tex. Oct. 18, 2000) (stock option plan offered only to high-level employees to increase retention and improve performance is not ERISA employee benefit plan). The holdings in these cases make clear that the Plan is not an ERISA "employee welfare benefit plan."

The *Murphy* and *Oatway* cases are particularly instructive. In *Murphy*, the defendant

7

employer instituted a bonus program for select employees by assigning an interest in a drilling prospect on behalf of those employees to a third party to administer the interest. *Murphy*, 611 F.2d at 572. The employee's interest was based on tenure, classification, and contribution to the company and the employee owned the interest after retirement. *Id*. at 572-73. In the event of employment termination, the employee was divested of the interest. *Id*. at 573 n.3. The Fifth Circuit held that the plan was not an ERISA "employee benefit plan" because the bonuses were discretionary, based upon the employee's service, and were awarded in addition to regular income. *Id*. at 574. The court noted that "[i]t is evident that the primary purpose of the [plan] was to reward employees for their service with present benefits." *Id*.

In *Oatway*, the Third Circuit similarly determined that a stock option incentive plan offered to key employees was not governed by ERISA. *Oatway*, 325 F.3d at 189. The court based its conclusion on the facts that the "stock options were discretionary, given in recognition of special service, and awarded in addition to [the employee's] regular compensation." *Id*. (citing *Murphy*, 611 F.2d at 575-76). Further, in determining that the plan was not an "employee pension benefit plan," the court identified that the plan did not result in deferral of the employee's income. *Id*.

Here, the Plan, like the plans in *Murphy* and *Oatway*, is discretionary and has the stated purposes of rewarding select employees' contributions to the company and providing incentives for retention and performance. The Plan was not "established or maintained for the purpose of providing for its participants . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services" or other such benefits. *See* 29 U.S.C. § 1002(1)(A). Consequently, the Plan is not an

8

"employee welfare benefit plan" as defined by ERISA.

Second, the Plan is not an "employee pension benefit plan." An "employee pension benefit plan" is a plan "established or maintained . . . *that by its express terms* or as a result of surrounding circumstances such plan . . . (i) provides retirement income to employees, or (ii) results in a deferral of income . . . ." 29 U.S.C. § 1002(2) (emphasis added). Employers do not create "employee pension benefit plans" by merely providing employees payment under a bonus system "unless such payments are systematically deferred to the termination of covered employment or beyond, or as to provide retirement income for employees." 29 C.F.R. § 2510.3-2(c). Consequently, granting stock options to designated employees does not necessarily equate to an "employee pension benefit plan."

Here, the terms of the Plan dictate that in the event that a employee loses his or her "Continuous Status as an Employee, Director or Consultant,"[1] any option granted under the Plan automatically terminates "effective on the last day of Continuous Status as an Employee, Director or Consultant." *Id*. at ¶ 6(h). Further, as discussed above, the expressed intent of the Plan was to retain employees and provide performance incentives. Courts have uniformly held that plans terminating benefits upon the end of employment which do not have the specific purpose of providing retirement income are not "employee pension benefit plans." *See, e.g., Murphy*, 611 F.2d at 575 (ERISA applies to plans where payments are systematically deferred to the termination of covered employment or beyond to provide retirement benefits, not to bonus plans intended to provide current income); *Goodrich v. CML Fiberoptics, Inc.*, 990 F. Supp. 48, 50 (D. Mass. 1998) (stock option plan that does not provide retirement income to employees despite allowing exercise of options after retirement was not "employee pension benefit plan");

---

[1] The Plan provides that "'Continuous Status as an Employee, Director or Consultant' means that the service of an individual to [Medpace], whether as an Employee, Director or Consultant, is not interrupted or

9

*Int'l Paper Company v. Suwyn,* 978 F. Supp. 506, 511 (S.D.N.Y. 1997) (stock option plan was not "employee pension benefit plan" where purpose of the plans was not to provide retirement benefits but, rather, to provide incentives to improve performance); *Lafian v. Electr. Data Systems Corp.,* 856 F. Supp. 339, 345 (E.D. Mich. 1994) (stock option program was not an ERISA pension plan because it was not designed to provide retirement income and did not result in systematic deferral of income); *Roderic v. Mazzetti & Assoc.,* No. C 04-2436, 2004 WL 2554453, at *8-9 (N.D. Cal. Nov. 9, 2004) (stock option plan requiring employees to sell shares back to employer upon retirement or termination was not "employee pension benefit plan"). The Court finds that as the Plan expressly provides that the right to option stock ends in the event that an employee loses their "Continuous Status as an Employee," *see* Doc. 8, Ex. A, ¶ 2(h) and ¶ 6(h), it was not intended to provide retirement benefits. Further, the Plan's intent was to provide select employees an opportunity to purchase Medpace stock in hopes of retaining their employment and improving their performance – not to provide retirement income. Consequently, the undersigned finds that the Plan is not an "employee pension benefit plan."

Plaintiff requests that the Court refrain from making the above determinations until discovery can be obtained. Plaintiff supports her request by citing to the Sixth Circuit's decision in *Kolkowski* where the court looked to extrinsic evidence in analyzing whether a plan was governed by ERISA. (Doc. 13 at 3-5). *See also Kolkowski,* 448 F.3d at 851-53. For the following reasons, the undersigned finds that *Kolkowski* is distinguishable from the instant matter and it is not necessary to look beyond the plain language of the instant Plan in determining whether the Plan is an "employee benefit plan" under ERISA.

*Kolkowski* is procedurally distinguishable as it involved the district court's ruling on a motion for summary judgment and not a motion to dismiss. As such, the extrinsic evidence was

terminated." *Id.* at ¶ 2(h).

10

part of the appellate record before the court. Further, the *Kolkowski* court did not hold, as plaintiff suggests, that courts should or must look to extrinsic evidence on a motion to dismiss in analyzing whether ERISA governs an employee plan. To the contrary, the Sixth Circuit stated that courts must start with the plain language of a plan in making these determinations and only where the terms of the plan are ambiguous do courts look to external evidence. *Kolkowski*, 448 F.3d at 847, 850. Plaintiff does not argue that the terms of the Plan are ambiguous nor does the undersigned find any ambiguity in them which would require consideration of extrinsic evidence.

Further, the issue presented by *Kolkowski* – whether an employee received comparable benefits under an employee benefits plan - is significantly different from the instant inquiry, *i.e.*, whether the Plan is an ERISA plan. The question raised by *Kolskowsi* was whether a stock option plan, issued at the same time as an employee protection plan providing severance benefits rights, was an ERISA benefits plan. *Id.* at 850-51. Upon determining that the terms "employee" and "employee benefits" were ambiguous because they were used interchangeably throughout the plan, the Sixth Circuit looked to extrinsic evidence to determine if the stock option plan was intended to be an employee benefit plan subject to ERISA. *Id.* The evidence analyzed clearly indicated that the stock option plans were to be considered a type of benefit; thus, the court held that it was an ERISA plan. *Id.* at 851-53. The instant Plan, on the other hand, is a separate and distinct document from any other employee benefit plan and there is no argument or allegation suggesting that the Plan was intended to be a benefit as opposed to bonus compensation. Notably, the Sixth Circuit itself distinguished the issue raised in *Kolkowski* from the instant one. *Id.* at 852 (noting that whether an employee received comparable benefits was distinct issue from "whether a stock option plan itself qualifies as a pension plan governed by ERISA.").

11

Given the distinct procedural posture and facts of *Kolkowski*, the undersigned finds that it is not determinative in the instant matter. As there is no indication that the terms of the Plan are ambiguous, the undersigned finds that whether the Plan confers benefits subject to ERISA is an issue to be decided solely by looking to the plain language of the Plan. Accordingly, plaintiff's argument in support of denying the instant motion to dismiss to allow for discovery is not well-taken.

In sum, the Court finds that the Plan is neither an "employee welfare benefit plan" nor an "employee pension benefit plan." Consequently, the Plan is not governed by ERISA and, as such, plaintiff's ERISA claims must be dismissed. The undersigned notes, however, that while the Court does not have federal subject matter jurisdiction, it retains diversity jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1332. *See* Doc. 1 at ¶¶ 2-3, p. 6 (plaintiff alleges she is a domiciliary of Tennessee, that Medpace is an Ohio corporation, and seeks damages in excess of $75,000.00).

**IT IS THEREFORE RECOMMENDED THAT:**

Defendant Medpace, Inc.'s motion to dismiss plaintiff's ERISA claim (Doc. 7) be **GRANTED**.

2/14/13
Date

KAREN L. LITKOVITZ
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ASHLEY COPLEY,
    Plaintiff,

v.

MEDPACE, INC.,
    Defendant.

Case No. 1:12-cv-426

Dlott, J.
Litkovitz, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).