UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ASHLEY COPLEY,
    Plaintiff,

vs.

MEDPACE, INC.,
    Defendant.

Case No. 1:12-cv-426

Dlott, J.
Litkovitz, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff, Ashley Copley, brings this action under the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*, and Ohio state law alleging breach of contract, unjust enrichment, and equitable estoppel claims against defendant Medpace, Inc. (Medpace) for allegedly terminating her employment in order to deny her certain benefits. (Doc. 1). Plaintiff's ERISA claim was previously dismissed by the Court and only plaintiff's state law claims remain.[1] This matter is before the Court on the parties' cross-motions for summary judgment (Docs. 40, 46), their responses in opposition (Docs. 52, 49), and their reply memoranda (Docs. 55, 54).

**I. Factual Background**

The following facts were taken from the evidence submitted by both parties in connection with their summary judgment motions and are undisputed unless otherwise noted.

Medpace is an Ohio corporation located in Cincinnati, Ohio. Plaintiff was hired by Medpace in 2007 as the Global Head of Payroll and Expense Reporting. It is undisputed that from 2007 until April 2011, plaintiff was an "at-will" employee and her employment was

---

[1] On March 25, 2013, the District Judge adopted the undersigned Magistrate Judge's recommendation to grant Medpace's motion to dismiss plaintiff's ERISA claim. (Docs. 15, 18). The Court retains jurisdiction over plaintiff's state law claims due to diversity of citizenship pursuant to 28 U.S.C. § 1332 as plaintiff is a domiciliary of the State of Tennessee, Medpace is an Ohio corporation, and the amount in controversy exceeds $75,000.00. *See* Docs. 1, 5.

terminable by Medpace at any time. During her tenure with Medpace, plaintiff was awarded stock options that automatically terminated on her last day as an employee, director, or consultant for Medpace.

On April 25, 2011, plaintiff met with her supervisor, Jesse Geiger, to inform him that her husband had been promoted and would be moving from Cincinnati to Nashville, Tennessee to work for a period of one to two years, and to discuss her options for continued employment with Medpace. The parties dispute the substance of this conversation. Plaintiff testified that she advised Mr. Geiger that although her husband would be relocating to Nashville, she intended to continue working for Medpace provided she could work remotely at times. (Doc. 42 at 65-66, Plaintiff's deposition). Plaintiff testified that she intended to continue living in her home in Cincinnati, but she wanted the ability to periodically work remotely from Nashville. (*Id.* at 68-69). Mr. Geiger testified that while plaintiff informed him of her belief that she could continue her role working remotely from Nashville, he advised that plaintiff's position was Cincinnati-based and that Medpace would need to replace her[2] if she intended to move. (Doc. 44 at 19-20, Jesse Geiger's deposition). Mr. Geiger further testified that he asked plaintiff if she was interested in a longer transition period than the customary two-weeks, during which she would be able to work remotely from Nashville, and informed her that he would speak to Dr. August Troendle, Medpace's president, to determine the possibility of such an arrangement. (*Id.* at 20-21).

The following day, plaintiff and Mr. Geiger reconvened. Mr. Geiger informed plaintiff that Dr. Troendle would accommodate plaintiff's request to work remotely from Nashville during the longer transition period. Plaintiff and Mr. Geiger discussed this period possibly

---

[2] Plaintiff disputes that Mr. Geiger informed her of the need to hire a replacement for her position during the April 25, 2011 meeting. *See* Doc. 42 at 67.

2

lasting through June or July 2011 during which time plaintiff would train an individual to take over her duties and then possibly move into a consultant or contractor position. The meeting closed with the understanding that Mr. Geiger would take this proposal to Dr. Troendle. Plaintiff testified that it was at this second meeting that Mr. Geiger informed her of his preference that her position remain based in Cincinnati. (Doc. 42 at 75). Plaintiff further testified that at the close of this meeting, it was her understanding that Mr. Geiger was going to ask Dr. Troendle if plaintiff "could continue in [her] current position for several months, and then have the potential of being some sort of contractor after that several month period." (Doc. 42 at 74).

On or about April 29, 2011, plaintiff met with Mr. Geiger a third time. Plaintiff testified that at this meeting she was informed that Dr. Troendle had agreed to an extended transition period and that her status as a Medpace employee would remain unchanged through June 30, 2011, and possibly through July 31, 2011. (Doc. 42 at 79). Plaintiff also agreed to develop a transition plan, which included the training of her replacement to perform many of plaintiff's job duties during the month of June. (Doc. 42 at 80-82). Plaintiff further testified she accepted Mr. Geiger's proposal to continue working in her current position through June 30, 2011, and that the parties planned on discussing ongoing employment as a contractor or consultant at the close of this period. (*Id.* at 79-80). Mr. Geiger disputes that he made a formal proposal regarding the length of the transition period or plaintiff's employment at this meeting. (Doc. 44 at 29-30).

On or about May 2, 2011, plaintiff and Mr. Geiger attended a management team meeting. Plaintiff testified that Mr. Geiger informed the attendees that plaintiff would be in her current position through at least June 30, 2011. (Doc. 42 at 94, 96). Plaintiff also testified that Mr. Geiger informed the attendees that he wanted a smooth transition period. They also discussed a transition plan. (Doc. 42 at 97). Mr. Geiger testified that at this meeting plaintiff announced that

she was leaving Medpace in one to two weeks. (Doc. 44 at 24-25). Mr. Geiger did not recall specifying what plaintiff's last day would be at this meeting. (*Id.* at 26). Lisa Bush, a Senior Accountant for Medpace on May 2, 2011, attests she was present at this meeting and that Mr. Geiger announced that plaintiff "would be transitioning her position, but that she would remain in her current position until June 30, 2011." (Doc. 46, Ex. 1, Affidavit of Lisa Bush).

On or about May 10, 2011, plaintiff and Mr. Geiger met again to discuss the transition plan. At this meeting, Mr. Geiger informed plaintiff that Dr. Troendle had determined that plaintiff's last day of employment would be May 31, 2011. Later that day, plaintiff emailed the following to Mr. Geiger: "Per our conversation on April 25th, my husband is being relocated to Nashville for a period of 1-2 years. My preference at that time and to this day is to continue my position with Medpace with the ability to work remotely at times from Nashville and at times out of the Cincinnati office as required at an agreed upon advance schedule between the two of us." (Doc. 42, Ex. 23). Mr. Geiger sent the following response on May 11, 2011:

> On April 25 you informed me that you were moving to Nashville in two weeks. You asked if there was some possibility of performing your job remotely from Nashville. I communicated that the position remains Cincinnati-based and said that as a result of your resignation the company will be replacing you with a new Cincinnati-based employee but that we would consider a transition period beyond the typical two week notice period with some time in Cincinnati and some time in Nashville. . . .
>
> As we discussed today, your last day of employment will be May 31, 2011 with the expectation that you will remain professional and cooperative through that time. If you need to leave earlier, please let me know.
>
> The company is open to considering a post-employment consulting agreement with you for a period of time and scope to be determined. Let me know if this is something you are interested in and we can discuss specific arrangements.

(*Id.*).[3] Mr. Geiger subsequently presented plaintiff with a proposed agreement to continue

---

[3]This email string is found at CM/ECF PAGEID #371.

working for Medpace during June 2011 on a contractual basis at a rate of $500.00 per day. Plaintiff declined this proposal.

Plaintiff claims that, by and through Mr. Geiger, Medpace entered into an oral employment agreement with her whereby Medpace promised to employ plaintiff through June 30, 2011 in exchange for her promise to develop a transition plan and train her replacement. Plaintiff further claims that Medpace breached this contract by unilaterally setting May 31, 2011, as her final day of employment. Plaintiff contends that Medpace planned to restructure with a private equity investment firm in June 2011 and breached its employment contract with plaintiff to prevent plaintiff from being able to capitalize on her stock options. Plaintiff asserts that had she been an employee through June 30, 2011, she would have been entitled to exercise her stock options valued at $67,500.00.

## II. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Under Federal Rule of Civil Procedure 56(c), a grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield*, 295 F.3d at 615; *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio*, 475

U.S. 574, 587 (1986); *Little Caesar Enterprises, Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

**III. Resolution**

At the outset, the undersigned recommends that Medpace's motion for summary judgment on plaintiff's unjust enrichment and equitable estoppel claims be denied as moot in light of plaintiff's withdrawal of these claims. *See* Doc. 52 at 7.[4] The Court now turns to the parties' arguments regarding plaintiff's breach of contract claim.

Medpace maintains it is entitled to summary judgment because plaintiff cannot establish the elements of her breach of contract claim. Medpace contends that because plaintiff's status as an "at-will" employee throughout her employment with Medpace is undisputed, her employment was terminable at any time. Medpace therefore asserts it did not breach any contract when it set plaintiff's final date of employment as May 31, 2011. Medpace further argues that although

---

[4] Plaintiff's response in opposition to Medpace's summary judgment motion provides: "The claim[s] for unjust enrichment and equitable estopple (sic) were made prior to discovery. At this time[, p]laintiff will withdraw

6

June 30, 2011, was discussed as a possible end date, plaintiff cannot put forth any evidence establishing that the parties mutually agreed to change plaintiff's employment status from "at-will" to contractual. In support, Medpace relies on the deposition testimony of plaintiff and Mr. Geiger, emails between the parties, plaintiff's employment application documents, and documents relating to plaintiff's stock options. (Doc. 40 at 12-15).

In contrast, plaintiff contends that Medpace, by and through Mr. Geiger, entered into an oral contract with plaintiff, separate and distinct from her "at-will" employment, and agreed to employ her through June 30, 2011. Plaintiff maintains that Medpace's unilateral decision to set May 31, 2011, as her last date of employment constitutes a breach of that contract. Plaintiff further maintains that as a result of Medpace's breach, she incurred damages in the amount of $8,175.00 in lost wages and $67,500.00 for the loss of her ability to exercise her stock options. Plaintiff supports her motion with her own deposition testimony, the deposition testimony of Mr. Geiger, and the affidavit of Lisa Bush, a former Medpace employee.

A. Contract Formation

"A contract is an agreement, upon sufficient consideration, between two or more persons to do or not to do a particular thing." *Nilavar v. Osborn*, 738 N.E.2d 1271, 1281 (Ohio Ct. App. 2000) (quoting *Lawler v. Burt*, 7 Ohio St. 340, 349 (Ohio 1857)). To prove a breach of contract under Ohio law, plaintiff must establish: (1) the existence of a contract; (2) performance by plaintiff; (3) breach by Medpace; (4) and damages or loss to plaintiff. *Doner v. Snapp*, 649 N.E.2d 42, 44 (Ohio App. Ct. 1994). To prove the existence of a contract, plaintiff must show mutual assent, *i.e.*, a "meeting of the minds" (generally offer and acceptance); consideration; and that the contract was definite as to its essential terms. *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002); *Nilavar v. Osborn*, 711 N.E.2d 726, 732 (Ohio Ct. App. 1998). Whether a

---

the claims for unjust enrichment and equitable estopple (sic)." (Doc. 52 at 7).

7

"meeting of the minds" has occurred "is a question of fact to be determined from all the relevant facts and circumstances." *Garrison v. Daytonian Hotel*, 663 N.E.2d 1316, 1317 (Ohio Ct. App. 1995).

As noted by plaintiff throughout her briefings, her breach of contract claim is narrow in scope. It is undisputed that throughout her employment with Medpace, plaintiff was an "at-will" employee; the terms of her employment were not governed by any contractual agreement; and Medpace had the power to terminate her position at any time. *See Mers v. Dispatch Printing Co.*, 483 N.E.2d 150, 153 (Ohio 1985) (Ohio "has long recognized the right of employers to discharge employees at-will."). The limited inquiry before the Court is whether Medpace and plaintiff entered into an oral contract whereby Medpace promised to employ plaintiff through the month of June 2011. Because there are genuine issues of material fact as to whether the parties formed such a contract, neither party is entitled to summary judgment on plaintiff's breach of contract claim.

Plaintiff and Mr. Geiger held three meetings at the end of April 2011. The first meeting was held on April 25, 2011. Plaintiff testified that at this initial meeting, she notified Mr. Geiger that her husband was relocating to Nashville for work and that she wanted to work remotely from there on occasion. Plaintiff maintains that she did not tender her resignation during this meeting and she was not informed at this time that this arrangement would require Medpace to replace her. Mr. Geiger presents a different account. Mr. Geiger testified that during this meeting he told plaintiff that her position required an employee based in Cincinnati full-time and that Medpace would hire somebody to replace her if she intended to work remotely. He also testified that he asked plaintiff if she was interested in a longer than two-week transition period but that this would need to be approved by Dr. Troendle.

8

The second meeting was held the following day. Plaintiff testified that Mr. Geiger reported that Dr. Troendle had approved a plan under which plaintiff would work remotely during a longer transition period after which Medpace would entertain plaintiff's continued employment as a consultant or contractor on a contract basis. Plaintiff stated that the meeting closed with the understanding that Mr. Geiger would speak with Dr. Troendle about the transition period lasting through June or July 2011.

The parties met for a third time on August 29, 2011. Plaintiff testified that Mr. Geiger advised her at this time that Dr. Troendle agreed to keep her on in her current position as a full-time Medpace employee through at least June 30, 2011. Plaintiff further testified that she accepted this proposal and that the parties continued to talk about her work duties. Plaintiff also agreed to develop a transition plan and to train her replacement during the month of June. (Doc. 42 at 80-82). Mr. Geiger disputes that he made a formal proposal of ongoing employment. Mr. Geiger also testified that he and plaintiff never discussed June 30, 2011 as a specific end-date for the proposed transition period. (Doc. 44 at 65).

Ms. Bush attests that she was present at a May 2, 2011 management team meeting during which Mr. Geiger announced that plaintiff would remain in her current position until June 30, 2011, but would be transitioning thereafter. Mr. Geiger testified that he did not recall making this statement. (Doc. 44 at 59).

There is a factual dispute as to whether an employment contract was formed between plaintiff and Medpace on April 29, 2011. Plaintiff testified that Mr. Geiger made a formal offer to keep her on until at least June 30, 2011, which she accepted. This testimony is supported by Ms. Bush's declaration. Mr. Geiger disputes that he made this offer or that he and plaintiff discussed June 30, 2011, as a specific end-date. The Court is not permitted to resolve issues of

9

fact at summary judgment; it may only determine whether there are issues in dispute to be decided on a trial on the merits. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir. 1982) (citing *U.S. v. Articles of Device . . . Diapulse*, 527 F.2d 1008, 1011) (6th Cir. 1976)). "[I]f a disputed question of fact remains, the district court should deny the motion for summary judgment and proceed to trial." *Id.* (citations omitted). *See also Costner Consulting Co. v. U.S. Bancorp*, 960 N.E.2d 1005, 1011 (Ohio Ct. App. 2011) (holding that the trial court erred where it construed disputed factual evidence at summary judgment and found that the parties had mutually assented to contract terms). Because there remains a disputed question of fact regarding whether the parties formed a contract on April 29, 2011, summary judgment is inappropriate.

Medpace argues that even if plaintiff's version of the facts are accepted, her contract claim still fails because she signed documents confirming her understanding that the at-will nature of her employment could not be modified by Mr. Geiger's alleged oral promises. (Doc. 40 at 15). Medpace refers to an employment application plaintiff completed on August 14, 2007 prior to her employment with Medpace and an Acknowledgement form plaintiff executed on August 28, 2007, after she was hired. The pertinent portion of the application provides:

> I understand that nothing in this employment application, the granting of an interview or my subsequent employment with Medpace is intended to create an employment contract between myself and Medpace under which my employment could be terminated only for cause. On the contrary, I understand and agree that, if hired, my employment will be terminable at-will and may be terminated by me or Medpace at any time and for any reason. I understand that no person at Medpace has authority to authorize any agreement contrary to the foregoing.

(Doc. 42, Ex.1, PAGEID #347). The Acknowledgment provides: "I understand that my employment with Medpace, Inc. is "at-will" and that either Medpace, Inc. or I may terminate my employment at any time and for any reason." (Doc. 42, Ex. 3, PAGEID # 350). Medpace

10

maintains that this evidence shows that plaintiff was aware that Mr. Geiger did not have authority to alter the nature of her "at-will" employment with Medpace and, accordingly, her breach of contract claim fails.

Plaintiff contends that she and Medpace entered into a new, oral contract that changed the terms of her at-will employment. Plaintiff does not contend that Medpace made an oral promise to keep her employed. Rather, plaintiff contends that Medpace offered her a term of employment to a specific date in lieu of leaving her employment during the standard two-week transition period, which plaintiff accepted.

An exception to the employment-at-will doctrine is the existence of an implied or express contract. *Mers*, 483 N.E.2d at 154. *See also Wright v. Honda of Am. Mfg., Inc.*, 653 N.E.2d 381, 384 (Ohio 1995). "Whether explicit or implicit contractual terms have altered an at-will-employment agreement depends upon the history of the relations between the employer and employee, as well as the facts and circumstances surrounding the employment relationship." *Taylor v. J.A.G. Black Gold Mgt. Co.*, No. 09AP-209, 2009 WL 2940167, at *4 (Ohio Ct. App. Sept. 15, 2009) (citing *Wright*, 653 N.E.2d at 384). "The relevant facts and circumstances include 'the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question. . . .'" *Id.* (quoting *Mers,* paragraph two of the syllabus). "Clear and unambiguous promises of continued employment for a specific period of time can create an implied or express contract of employment altering the at-will relationship." *Id.* (citation omitted).

Viewing plaintiff's evidence in the light most favorable to plaintiff for purposes of Medpace's argument, the parties mutually agreed that plaintiff's employment would continue during the specified transition period until June 30, 2011; plaintiff agreed to work beyond the

11

standard two-week transition period to assist in the transition and training of her replacement; and plaintiff agreed to develop a transition plan identifying the projects and activities to be transferred to her replacement. The facts and circumstances suggest that the at-will nature of the previous employment relationship was altered for the specific purpose of making a smooth transition from plaintiff to her replacement. Plaintiff presents evidence showing the parties mutually assented to something other than at-will employment. Plaintiff's testimony and the affidavit of Ms. Bush evince a contract for a specified duration that altered the terms of plaintiff's at-will employment. Because there remain genuine issues of material fact as to whether plaintiff and Medpace had a "meeting of the minds," the Court cannot conclude that Mr. Geiger's oral representations were insufficient to alter the nature of plaintiff's at-will employment.

Medpace also argues it is entitled to summary judgment because plaintiff cannot establish that the alleged agreement to employ her through June 30, 2011 was supported by consideration. "Under Ohio law, consideration consists of either a benefit to the promisor or a detriment to the promisee." *Carlisle v. T & R Excavating, Inc.*, 704 N.E.2d 39, 43 (Ohio Ct. App. 1997) (citation omitted). *See also Nilavar*, 711 N.E.2d at 735. "The benefit or detriment does not need to be great. In fact, a benefit need not even be actual, as in the nature of a profit, or be as economically valuable as whatever the promisor promises in exchange for the benefit; it need only be something regarded by the promisor as beneficial enough to induce his promise." *Carlisle,* 704 N.E.2d at 43.

Medpace contends that plaintiff's breach of contract claim fails because there is no consideration supporting the alleged contract for continued employment through June 30, 2011. Medpace asserts plaintiff has not established that she forfeited other employment opportunities in

12

reliance on Medpace's alleged promise of employment or that Medpace offered additional compensation or a bonus in exchange for plaintiff's promise to continue working for it. Medpace therefore maintains that plaintiff's employment remained "at-will" and was terminable at any time by Medpace. (Doc. 40 at 15). In support of this argument, Medpace relies on *Sagonowsky v. The Andersons, Inc.*, No. L-03-1168, 2005 WL 217023 (Ohio Ct. App. Jan. 28, 2005), for the proposition that "[g]enerally, where the employee furnishes no consideration other than his or her services incident to the employment, the relationship amounts to an indefinite general hiring terminable at-will of either party unless the terms of the contract or other circumstances clearly manifest the parties intent to bind each other." (Doc. 40 at 15).

*Sagonowsky* is distinguishable from the instant case. In *Sagonowsky*, a discharged employee sued his former employer for breach of contract disputing that his employment was "at-will." The employee's breach of contract claim was premised entirely on mission statements contained in the "Employee Bill of Rights" and employer's handbooks. There was no evidence that the employer made direct statements to the employee promising him employment for a specific duration of time. *Id.* at *9. The appellate court stated that "in the absence of a contract which provides for a specific duration of employment, an employee is presumed to be employed at-will, terminable at any time, with or without cause." *Id.* (citing *Phung v. Waste Mgt., Inc.*, 491 N.E.2d 1114 (Ohio 1986); *Henkel v. Educational Research Council*, 344 N.E.2d 118 (Ohio 1976)). While the court of appeals found the employer's aspirational goals were "laudable," those written principles did not establish a contract for a specific term or duration of employment or change the at-will nature of the employment agreement. *Id.* at 10.

Here, in contrast, plaintiff has put forth evidence that Mr. Geiger, on behalf of Medpace, made an offer to employ plaintiff through June 30, 2011, as part of a transition period beyond the

13

standard two-week period during which plaintiff would train her replacement and develop a specific plan to assist in the transition. Plaintiff's acceptance of the alleged offer to continue employment through a date certain altered the terms of the parties' prior at-will employment relationship – a relationship either party could have terminated at any time and for any reason without being in breach of the employment agreement. *Henkel*, 344 N.E.2d 118 (employment relationship with no fixed duration is considered at-will, meaning either party can terminate the relationship at any time, without cause). Plaintiff presents evidence that in place of the previous at-will arrangement, the parties entered into an oral employment contract for a specific duration of time. "Where an employment contract of *definite* duration exists between the parties, there is also mutuality of obligation, since typically the employer must have 'just cause' to terminate the employee and the employee is also bound to honor the terms of the contract." *Jones v. East Center for Community Mental Health, Inc.*, 482 N.E.2d 969, 973 (Ohio Ct. App. 1989) (emphasis in the original), *overruled in part on other grounds by Stites v. Napoleon Spring Works, Inc.*, No. F-96-002, 1996 WL 660655 (Ohio Ct. App. Nov. 15, 1996). Viewing the evidence in the light most favorable to plaintiff, as defendant concedes for purposes of this argument, the parties in essence renegotiated the terms of the parties' at-will employment: Medpace offered to employ plaintiff for a specific term (through June 30, 2011) for purposes of training her replacement and developing a transition plan and plaintiff's assent thereto constitutes acceptance of continued employment on new terms. Plaintiff's performance of those job duties constituted consideration for her continued employment and compensation. Moreover, by assenting to an employment agreement of a specific term, both parties gave up their respective rights under the former at-will arrangement to terminate the employment relationship at any time

14

or for any reason. There is sufficient consideration supporting the agreement such that Medpace is not entitled to summary judgment on this basis.

For the above reasons, the undersigned finds there are genuine issues of material fact as to whether the parties had a "meeting of the minds" on April 29, 2011, sufficient to form an oral contract under which Medpace agreed to employ plaintiff through June 30, 2011. As this determination is a question of fact, *Garrison*, 663 N.E.2d at 1317, summary judgment on this issue is inappropriate. The Court now turns to Medpace's argument that it is nevertheless entitled to summary judgment because plaintiff failed to mitigate her damages.

B. Damages

Medpace argues that plaintiff has forfeited her right to recover damages pursuant to her breach of contract claim because she did not accept Medpace's offer to employ her as a consultant or contractor for the month of June 2011. Medpace asserts plaintiff would have realized a greater income as a consultant than as a Medpace employee and therefore she cannot recover lost wages for the month of June 2011. Medpace further argues that plaintiff's rejection of this offer bars her recovery of damages related to her stock options because she would have been able to capitalize on the stock options as a consultant for Medpace. (Doc. 19 at 19-20).

Plaintiff had a duty to mitigate damages incurred pursuant to Medpace's alleged breach of contract. *See Thomasville Furniture Indus., Inc. v. Elder-Beerman Stores Corp.*, 250 B.R. 609, 626 (S.D. Ohio 1998). This duty "requires only reasonably, practical care and diligence, not extraordinary measures to avoid excessive damages." *Provident Bank v. Barnhart*, 445 N.E.2d 746, 750 (Ohio Ct. App. 1982). "[D]amages which the plaintiff might have avoided with reasonable effort without undue risk, expense, or humiliation are either not caused by the defendant's wrong or need not have been, and, therefore, are not to be charged against him."

15

*Chandler v. General Motors Acceptance Corp.*, 426 N.E.2d 521, 522 (Ohio Ct. App. 1980). Because mitigation of damages is an affirmative defense, Medpace bears the burden of proving with reasonable certainty the amount that plaintiff could have earned during June 2011. *State ex rel. Butterbaugh v. Ross Cty. Bd. of Commrs.*, 608 N.E.2d 778, 783 (Ohio Ct. App. 1992) (citing *State ex rel. Martin v. Bexley City School Dist. Bd. of Educ.*, 528 N.E.2d 1250, 1252 (Ohio 1988)).

Assuming, *arguendo*, that plaintiff rejected a specific offer by Medpace to work as a consultant or contractor for the month of June 2011 and that the rejection of this offer constitutes a failure to mitigate damages, Medpace has nevertheless failed to meet it burden of establishing by a reasonable certainty the amount plaintiff could have earned during June 2011. Medpace asserts that plaintiff would have earned more money as a contract employee than she did as a full-time employee because the proposed contract provided for a daily rate of $500 up to a maximum of $11,000 for the month, an amount that was greater than her monthly salary. *See* Doc. 44 at 50, 53. *See also* Doc. 42 at 166 (plaintiff testified that her monthly salary for June 2011 would have been $8,125). However, there is no evidence establishing the exact amount that plaintiff would have earned in June 2011 under the proposed contract position. Mr. Geiger testified that it was unclear how many days plaintiff would be needed to work in June 2011 and it was not clear that plaintiff would be needed on a full-time basis. (Doc. 44 at 52, 55). Where the evidence is unclear, the calculation of damages is an issue of fact to be determined by the trier of fact. *See Thomasville Furniture Indus.*, 250 B.R. at 631. *See also Andrew v. Power Mktg. Direct, Inc.*, 978 N.E.2d 974, 993 (Ohio Ct. App. 2012) (citation omitted) ("the fact-finder has the discretion to award damages within the range of evidence presented at trial, so long as a rational basis exists for its calculation."). Medpace has not established by a reasonable certainty

16

the amount of pay plaintiff would have earned under the proposed June 2011 employment contract. Therefore, her rejection of the alleged offer to work as a contractor does not bar plaintiff's claim for lost wages at this juncture.

Lastly, Medpace asserts that plaintiff cannot claim as damages the value of the stock options because had plaintiff accepted the proposed June 2011 contract she would have been entitled to redeem her stock options. Medpace's 2008 Amended and Restated Non-qualified Stock Option Plan (Stock Option Plan)[5] provides that "[p]rior to an [initial public offering], in the event [plaintiff's] Continuous Status as an Employee, Director or Consultant terminates, any [o]ption granted under this [p]lan shall automatically terminate, effective on the last day of Continuous Status as an Employee, Director or Consultant." (Doc. 47, Ex. 1, PAGEID #436). Under the Stock Option Plan, "Continuous Status as an Employee, Director or Consultant means that the service of an individual to [Medpace], whether as an Employee, Director or Consultant, is not interrupted or terminated." (*Id.* at PAGEID #433). Medpace contends that even though plaintiff no longer maintained her status as an "employee" in June 2011, she could have become a "consultant" in June 2011 with the corresponding option to exercise her stock options. Medpace appears to be arguing that even if it is found that it breached its employment contract by terminating plaintiff before June 30, 2011, because plaintiff rejected the opportunity to then become a "consultant" in June 2011, she gave up the right to now claim damages from the stock options.

Medpace's argument is speculative because the language of the Stock Option Plan does not clearly show plaintiff could have exercised her stock options as a consultant for Medpace. Under the Stock Option Plan, plaintiff was considered an "Employee," which is defined as "any

---

[5]The Stock Option Plan was filed under seal. The corresponding CM/ECF PAGEID numbers have been provided for ease of reference.

17

person . . . employed by [Medpace] or any affiliate of [Medpace]." (Doc. 47, Ex. 1 at PAGEID #434). A "Consultant" is defined as "any person . . . engaged by [Medpace] or an affiliate to render services and who is compensated for such services. . . ." (*Id.* at PAGEID #433). Medpace has not met its burden of showing by a reasonable certainty that plaintiff would have even qualified as a "Consultant" under the terms of the Stock Option Plan for purposes of exercising the stock options she was awarded as an "Employee." Notably, Mr. Geiger testified that he was uncertain as to the amount of work that plaintiff would have been assigned as a "Consultant" in June 2011 because the scope of the work was undetermined. *See* Doc. 44 at 55. Thus, even if plaintiff had accepted the proposal to become a consultant Medpace could have determined there was no work for her to perform in June 2011. In that event, plaintiff would not have been considered a "Consultant" pursuant to the Stock Option Plan because she would not have received compensation from Medpace in June 2011. Thus, plaintiff would have lost the right to exercise her stock options even if she had accepted the proposed contract.

Moreover, Medpace has not shown to a reasonable certainty that the terms of the Stock Option Plan would have permitted plaintiff to transition her status from "Employee" to "Consultant" and retain the ability to exercise the stock options she had previously been given. The Stock Option Plan provides that Medpace's Board of Directors has the sole discretion in determining whether Continuous Status as an Employee, Director or Consultant has been interrupted by a transfer. (Doc. 47, Ex. 1 at PAGEID #433). The Plan does not contain a provision on the effects of changing status from "Employee" to "Consultant." Nor does it make clear whether such a change is considered a "transfer" which would trigger the discretion of the Board in determining whether such an employee's status remains continuous. In interpreting the Stock Option Plan, the Court must examine the agreement as a whole. *See Cincinnati Ins. Co. v.*

18

*CPS Holdings, Inc.*, 875 N.E.2d 31, 33-34 (Ohio 2007). Because the Stock Option Plan confers Medpace's Board of Directors with the sole discretion to determine whether plaintiff would have retained her stock options had she transitioned from her position as an "Employee" to a "Consultant," Medpace has not shown by a reasonable certainty that plaintiff would in fact have been able to exercise her stock options had she become a Medpace consultant. The Court is unable to conclude from the evidence presented that plaintiff is precluded from recovering the value of the stock options if she is successful on her breach of contract claim at trial. Therefore, Medpace is not entitled to summary judgment.

**IV. Conclusion**

For the reasons stated above, the undersigned **RECOMMENDS** that Medpace and plaintiff's motions for summary judgment (Docs. 40, 46) be **DENIED** with respect to plaintiff's breach of contract claim. It is further recommended that Medpace's motion for summary judgment (Doc. 40) be **DENIED** as moot with respect to plaintiff's unjust enrichment and equitable estoppel claims.

12/19/14
Date

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ASHLEY COPLEY,
    Plaintiff,

vs.

MEDPACE, INC.,
    Defendant.

Case No. 1:12-cv-426

Dlott, J.
Litkovitz, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).